**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MERCANTILE GLOBAL HOLDINGS, INC., <br><br>                          *Petitioner*, <br> v. <br><br> HAMILTON M&A FUND, SP, <br><br>                      *Respondent*. | Case No. 1:23-cv-08446-DEH |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT**
**HAMILTON M&A FUND, SP'S MOTION TO VACATE ARBITRATION AWARD**

**SCHULMAN BHATTACHARYA, LLC**

Jeffrey S. Gavenman
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
and
3445 Winton Place, Suite 228
Rochester, New York 14623
Telephone: (240) 356-8553
Facsimile: (240) 356-8558
E-mail: jgavenman@schulmanbh.com

*Counsel for Respondent Hamilton M&A Fund, SP*

December 6, 2023

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................2

LEGAL STANDARD ...............................................................................................10

ARGUMENT ............................................................................................................12

    I. The Arbitrator Acted in Manifest Disregard of the Law by Awarding Damages That He Acknowledged Were No Better Than a Guess. ................................................................12

        A.    The Principles Governing this Case Are Black Letter Delaware Law That the Parties Placed Squarely Before the Arbitrator. ........................................................12

        B.    The Arbitrator Plainly Recognized the Reasonable Certainty Requirement Because He Correctly Applied It to Reject MGH's Claim for Future Lost Profits. ........................14

        C.    The Arbitrator Nonetheless Ignored the Reasonable Certainty Requirement Altogether When Considering the Market Value of the Shares. ....................................................15

    II. MGH Is Entitled to No More Than Nominal Damages Under Established Delaware Law. 19

CONCLUSION ..........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Agilent Techs., Inc. v. Kirkland*,
    2010 WL 610725 (Del. Ch. Feb. 18, 2010) ................................................................. 15

*AlixPartners, LLP v. Mori*,
    2022 WL 1111404 (Del. Ch. Apr. 14, 2022) .............................................................. 12

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
    2004 WL 1192602 (Del. Ch. May 28, 2004) .............................................................. 14

*Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*,
    257 F. Supp. 2d 681 (S.D.N.Y. 2003) ........................................................................ 11

*Bear Stearns & Co., Inc., Bear Stearns Sec. Corp. v. 1109580 Ontario, Inc.*,
    409 F.3d 87 (2d Cir. 2005) ......................................................................................... 14

*Callahan v. Rafail*,
    2001 WL 283012 (Del. Super. Mar. 16, 2001) .......................................................... 14

*Combs v. Same Day Delivery Inc.*,
    No. 1:22-cv-00520-MKV, 2023 WL 6162196 (S.D.N.Y. Sept. 20, 2023) ......... 11, 16

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ......................................................................................... 12

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*,
    430 F.3d 1269 (10th Cir. 2005) .................................................................................. 14

*Duncan v. Theratx, Inc.*,
    775 A.2d 1019 (Del. 2001) ......................................................................................... 13

*eCommerce Indus., Inc. v. MWA Intelligence, Inc.*,
    2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ............................................................ 13

*EDIX Media Grp., Inc. v. Mahani*,
    2006 WL 3742592 (Del. Ch. Dec. 12, 2006) ....................................................... 19, 20

*Elwell v. Raymond James Fin. Servs., Inc.*,
    --- F. Supp. 3d ---, No. 22-cv-10125 (JGK), 2023 WL 5186275 (S.D.N.Y. Aug. 10, 2023)...11,
    12, 18

*Garrity v. Credit Suisse Sec. (USA) LLC*,
    23 Civ. 1457 (KPF) & 23 Civ. 1830 (KPF), 2023 WL 7924726 (S.D.N.Y. Nov. 16, 2023)...12,
    16

*Great Hills Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP,*
  2020 WL 948513 (Del. Ch. Feb. 27, 2020) ............................................................13

*In re Heizer Corp.,*
  1990 WL 70994 (Del. Ch. May 25, 1990) ..............................................................15

*Interim Healthcare, Inc. v. Spherion Corp.,*
  884 A.2d 513 (Del. Super. Ct.), *aff'd,* 886 A.2d 1278 (Del. 2005) ..............................14, 15, 17

*Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC,*
  2009 WL 1111179 (Del. Ch. Apr. 27, 2009) .........................................................19

*Mahani v. EDIX Media Grp., Inc.,*
  925 A.2d 242 (Del. 2007) ....................................................................................19

*McCarthy v. Citigroup Glob. Mkts. Inc.,*
  463 F.3d 87 (1st Cir. 2006) ................................................................................14

*Medicalgorithmics S.A. v. AMI Monitoring, Inc.,*
  2016 WL 440138 (Del. Ch. Aug. 18, 2016) ...........................................................13

*Metro Storage Int'l LLC v. Harron,*
  275 A.3d 810 (Del. Ch. 2022) ..............................................................................15

*NetApp, Inc. v. Cinelli,*
  2023 WL 4925910 (Del. Ch. Aug. 2, 2023) ...........................................................12

*Oliver v. Boston Univ.,*
  2006 WL 1064169 (Del. Ch. Apr. 14, 2006) .........................................................19

*PDV Sweeney, Inc. v. ConocoPhillips Co.,*
  No. 14-cv-5183 (AJN), 2015 WL 5144023 (S.D.N.Y. Sept. 1, 2015) ..............................10, 11

*Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC,*
  2005 WL 3502054 (Del. Ch. Dec. 15, 2005) .........................................................19

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC,*
  497 F.3d 133 (2d Cir. 2007) ..............................................................................18

*Siga Tech., Inc. v. PharmAthene, Inc.,*
  132 A.3d 1108 (Del. 2015) ..................................................................................13

*Sky Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.,*
  2020 WL 881544 (Del. Ch. Feb. 24, 2020) ...........................................................12

iii

*Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*,
    492 F.3d 520 (4th Cir. 2007) ......................................................................13

*Tripi v. Prudential Sec., Inc.*,
    303 F. Supp. 2d 349 (S.D.N.Y. 2003) ......................................................17

*VH5 Capital, LLC v. Rabe*,
    2023 WL 4305827 (Del. Ch. June 30, 2023) .............................13, 17, 19

*Wallace v. Butler*,
    378 F.3d 182 (2d Cir. 2004) .....................................................................11


**Statutes**
9 U.S.C. § 10(a) .............................................................................................11


**Treaties**
United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    21 U.S.T. 2517; 300 U.N.T.S. 38 (Dec. 29, 1970) ..................................10


**Rules**
Local Rule 56.1 ................................................................................................2


**Treatises**
24 Williston on Contracts, § 64:8 (4th Ed. 2002) ........................................15

Respondent Hamilton M&A Fund, SP ("Hamilton"), by and through counsel, respectfully submits this memorandum of law (i) in support of its motion to vacate the arbitration award dated September 13, 2023 (the "Award") issued in favor of Petitioner Mercantile Global Holdings, Inc. ("MGH") (together with Hamilton, the "Parties") in the arbitration between the Parties before the International Centre for Dispute Resolution (the "ICDR") Case No. 01-22-0004-1325 (the "Arbitration"), and (ii) in opposition to MGH's Petition to Confirm Arbitration Award (the "Petition") (ECF No. 1).[1]

## PRELIMINARY STATEMENT

This case represents one of the rare instances in which an arbitral award must be vacated because it was rendered in manifest disregard of the law. Delaware black letter law is clear: contract damages must be proven with reasonable certainty and may not be merely speculative or conjectural. The Arbitrator undoubtedly appreciated this clear imperative because he specifically cited and applied it in rejecting MGH's claim for future lost profits. Despite his patent understanding of the law, though, the Arbitrator nonetheless awarded MGH more than $20 million in contract damages based entirely on an unsubstantiated estimate that MGH's own damages expert testified was "very speculative," and which the Arbitrator expressly acknowledged was "no more than a guess." And it is clear that such "guess" is the only basis for the Award—the Arbitrator stressed that the Parties presented no other relevant estimate to inform the Award and determined that the work done by MGH's damages experts was entirely worthless. Far from the reasonable certainty required to prove contract damages under Delaware law, the Arbitrator awarded MGH

---

[1] The Award is attached to the Petition as Exhibit A and is docketed at ECF No. 1-1. Hamilton cites to the Award as "Award at ¶ [ ]"). The Declaration of Jeffrey S. Gavenman in Support of Respondent Hamilton M&A Fund, SP's Motion to Vacate Arbitration Award (the "Gavenman Declaration") is attached hereto as Exhibit 1.

tens of millions of dollars based on no more than rank speculation. Plainly, the Arbitrator knew the applicable law and consciously chose simply to ignore it.

For these reasons and those set forth below, the Award should be vacated in part with respect to damages and remanded to the Arbitrator with instructions to award MGH nominal damages and to reconsider its award of attorneys' fees, costs, arbitration fees, and arbitrator compensation in light of the vacatur, and MGH's Petition should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Underlying Dispute.*

MGH is a bank holding company incorporated under the laws of Delaware. SOF at ¶ 1.[2] MGH operates as Mercantile Bank International ("MBI"), which is a digital asset custody bank under the supervision of the Puerto Rico Office of the Commissioner of Financial Institutions ("OCIF"). SOF at ¶ 1. Hamilton is a segregated portfolio of Hamilton Opportunity Fund, SPC ("HOF"), a Cayman Islands segregated portfolio company operating as a mutual fund under Section 4(3) of the Mutual Funds Act (Revised) of the Cayman Islands. SOF at ¶ 2.

The Investment Agreements at issue in the Arbitration are two of a series of agreements between the Parties. After engaging in preliminary discussions, HOF and MGH agreed that HOF or its affiliate would acquire MGH through a series of stock purchases. Award at ¶ 25. On December 1, 2021, MGH and HOF entered into a subscription agreement in which HOF would

---

[2] Hamilton's Local Rule 56.1 Statement in Support of its Motion to Vacate Arbitration Award is cited herein as "SOF at ¶ [ ]." The recitation of the factual background in the Award follows closely that provided by Hamilton in its briefing submitted to the Arbitrator. Hamilton takes no issue with the Arbitrator's description of the factual and procedural background set forth in the Award and cites to the Award here, in addition to the dispositive undisputed facts set forth in Hamilton's Local Rule 56.1 statement. With the exception of the Arbitrator's characterization of one portion of Hamilton's expert's testimony described below, Hamilton does not believe any facts are in dispute for purposes of this motion, whether set forth in the Award, Local Rule 56.1 statement, or both.

acquire shares in MGH (the "December Agreement"). Award at ¶¶ 3, 26. The December Agreement granted HOF an option to purchase all of the issued and outstanding shares of all classes of MGH's stock (the "First Option"), as well as an option to acquire newly issued shares of MGH's Series A-2 Preferred Stock (the "Second Option"). Award at ¶¶ 3, 26. The December Agreement provided that the aggregate value of the shares to be acquired through exercise of the First Option would be $12,610,747.00. Award at ¶ 26. The December Agreement likewise provided that the value of the Second Option would be $12,089,253.00 (the "$12M Payment"). Award at ¶ 26. HOF and MGH then executed a series of subscription agreements and a revolving line of credit to ensure that MGH would remain operational until Hamilton's acquisition of MGH could be completed following regulatory approval. Award at ¶ 27.

Once the Parties received regulatory approval from OCIF, they negotiated the other agreements contemplated by the December Agreement, namely: a Stock Purchase Agreement (the "SPA") to complete Hamilton's exercise of the First Option for about $12.6 million; an Investment Agreement ("Investment Agreement 1")[3] to complete Hamilton's exercise of the Second Option in exchange for the $12M Payment; an Exchange Agreement and Plan of Reorganization by which all the stock of MGH's various share classes would be converted to Class A Common Stock; and a second Investment Agreement (the "Investment Agreement 2")[4] (with Investment Agreement 1, the "Investment Agreements") by which Hamilton would purchase additional newly issued shares of MGH's Class A Common stock in exchange for $25 million (the "$25M Payment"). Award at ¶¶ 28–29; ECF No. 1-2 at 1–2; ECF No. 1-3 at 1; SOF at ¶ 3. Combined, Investment Agreement

---

[3] Investment Agreement 1 is attached to the Petition as Exhibit B and is docketed at ECF No. 1-2.

[4] Investment Agreement 2 is attached to the Petition as Exhibit C and is docketed at ECF No. 1-3.

1 and Investment Agreement 2 required Hamilton to pay MGH a total of approximately $37.1 million in return for equity shares in MGH (the "Shares"). Each Investment Agreement includes a provision requiring the Parties to have all disputes arising under them to be resolved in arbitration with the American Arbitration Association (the "AAA") pursuant to its expedited rules and procedures. ECF No. 1-2 at § 9(a); ECF No. 1-2 at § 11(a); SOF at ¶ 4.

The Parties executed these four agreements on Friday, September 16, 2022, and later that day, Hamilton instructed its bank, Silvergate Bank ("Silvergate"), to wire funds to MGH totaling approximately $49 million, constituting the combined purchase price of the SPA, the $12M Payment, and the $25M Payment. Award at ¶ 30. However, before the wire transfer could be completed, the United States Government seized Hamilton's funds on deposit at Silvergate in connection with a criminal investigation into certain of Hamilton's principals. Award at ¶ 31. Hamilton has no other funds besides those held at Silvergate and was therefore not able to complete payment of the purchase price of the Investment Agreements. Award at ¶ 31; SOF at ¶ 5. MGH subsequently initiated the underlying Arbitration pursuant to the arbitration clauses of each Investment Agreement (ECF No. 1-2 at § 9(a); ECF No. 1-2 at § 11(a)), seeking damages for breach of contract.

### B.    *The Arbitration.*

On September 30, 2022, MGH commenced the Arbitration by filing a demand for arbitration with the AAA. SOF at ¶ 6. MGH filed its operative Corrected Demand for Expedited Arbitration on November 4, 2022. *Id.* The Arbitration was designated as an expedited arbitration administered under the International Dispute Resolution Procedures as in effect March 1, 2021 (the "ICDR Rules") and the ICDR International Expedited Procedures in accordance with the

4

terms of the Investment Agreements. SOF at ¶ 7. Steven Skulnik was appointed as the Arbitrator on April 19, 2023. Award at ¶ 10; ECF No. 1-5; SOF at ¶ 8.

On May 26, 2023, following a procedural conference between the Parties and the Arbitrator, the Arbitrator issued Amended Procedural Order #1, embodying the Parties' agreement reached at the conference and establishing, among other things, New York, New York, as the arbitral seat and the law of Delaware as the substantive law applicable to the dispute. SOF at ¶ 9. Amended Procedural Order #1 likewise established a schedule for the submission of the Parties' pre-hearing briefing and expert reports, as well as the dates for a merits hearing. *Id.*

The Parties submitted their first set of pre-hearing briefs on June 28, 2023. MGH's submission included the report of its damages experts, David Abshier ("Mr. Abshier") and Dr. John Hekman ("Dr. Hekman"). SOF at ¶ 10.[5] The MGH Report presents MGH's damages claim in three different "scenarios," or measures. In "Damages Scenario #1," MGH sought the full amounts of the $12M Payment and $25M Payment under the Investment Agreements. MGH Rep. at ¶ 77. In "Damages Scenario #2," MGH sought (an astronomical) $313,909,958 in damages for future lost profits based on the notion that MGH had expected $100 million in total investment from Hamilton, even though the Parties had signed no additional agreements committing Hamilton to invest that much. *See* Award at ¶ 51; *see also* MGH Rep. at ¶ 106. Alternatively, under "Damages Scenario #3," MGH sought $118,611,623 in damages for future lost profits based on the $37 million investment called for in the Investment Agreements. *See* Award at ¶ 51; *see also* MGH Rep. at ¶ 111.

---

[5] The Report of David Abshier and John Hekman dated June 28, 2023 (the "MGH Report") is attached to the Gavenman Declaration as Exhibit A and is cited herein as "MGH Rep. at ¶ [ ]."

The Parties submitted their second set of pre-hearing briefs on July 18, 2023. SOF at ¶ 11.[6] Among other points, Hamilton's second brief (the "Second Brief") laid out Delaware's rules regarding contract damages, including that contract damages are based on the reasonable expectations of the parties (Second Br. at 25), must be proven with reasonable certainty (*id.* at 24, 27), and "cannot be awarded 'based on mere speculation.'" *Id.* at 24; SOF at ¶ 11.

The Arbitrator held a merits hearing on July 24 and 25, 2023 (the "Hearing"). SOF at ¶ 12. Following the Hearing, the Parties submitted post-hearing briefing on August 15, 2023. SOF at ¶ 13.[7] Hamilton's Post-Hearing Brief specifically addressed MGH's failure to provide evidence of the market price of the Shares that were to be purchased by Hamilton under the Investment Agreements or any method to calculate that market price. Post-Hearing Br. at 31–33; SOF at ¶ 13. In doing so, Hamilton reiterated MGH's burden to prove damages by a preponderance of the evidence (*See* Post-Hearing Br. at 30), as well as Delaware's clear rule that contract damages may not be proven by "mere speculation or conjecture." *See* Post-Hearing Br. at 30; SOF at ¶ 13. Nowhere in MGH's briefing, the MGH Report, or its other submissions did MGH present any data, analysis, estimates, or predictions as to the timing or amount of any future investment that it might receive to replace that provided for in the Investment Agreements. *See* Award at ¶ 82 n. 28; SOF at ¶ 14.

### C.    *The Award.*

On September 13, 2023, the Arbitrator issued the Award, determining that Hamilton is liable to MGH for breach of contract. Award at ¶ 62; SOF at ¶ 15. The Arbitrator rejected MGH's

---

[6] Hamilton's Second Brief is attached to the Gavenman Declaration as Exhibit B and is cited herein as "Second Br. at [ _ ]"

[7] Hamilton's Post-Hearing Brief (the "Post-Hearing Brief") is attached to the Gavenman Declaration as Exhibit C and is cited herein as "Post-Hearing Br. at [ _ ]."

claim for future lost profits under both such models described in the MGH Report, siding with Hamilton and finding that "MGH has not proved that its future lost profit damages are reasonably calculable or non-speculative." Award at ¶ 76; SOF at ¶ 16. The Arbitrator did not mince words when describing the projections relied upon by MGH's experts: "There has been no showing that the projections had any basis in reality." Award at ¶ 70.

Instead, the Arbitrator determined that the appropriate measure of damages was the difference between the contract price and the market value of the Shares. Award at ¶¶ 77–78, 82–83; SOF at ¶ 17. On that basis, the Arbitrator awarded MGH damages in the amount of $20,251,062.14. Award at ¶¶ 83, 91; SOF at ¶ 17.

However, in reaching that $20,251,062.14 figure, the Arbitrator flatly rejected each Party's calculations and, thus, both Parties' conclusions, as to the market value of the Shares. Award at ¶ 78; SOF at ¶ 18. Instead, the Arbitrator *sua sponte* determined that, because no substitute purchaser had acquired the Shares from MGH in a subsequent transaction, "the market value, to be deducted from the contract price [of the Investment Agreements], must be estimated." Award at ¶ 78; SOF at ¶ 18.

Unfortunately, as the Arbitrator lamented in the Award itself, "[N]either side's experts made an estimate of market value when presenting their opinions." Award at ¶ 80; SOF at ¶ 19. When asked by the Arbitrator at the Hearing how he would estimate the market value, Dr. Hekman candidly admitted: "Well, it would be very speculative[.]" Award at ¶ 80; SOF at ¶ 21. Dr. Hekman then hypothesized: "let's say – I don't know whether [Mr. Abshier] said that [MGH] might get [$]20 million at some point." Award at ¶ 80; SOF at ¶ 21. Although the Arbitrator excluded this testimony from the Award, Dr. Hekman then asked Mr. Abshier, "Am I getting you into too much

trouble?" Ex. D at 381:14; SOF at ¶ 21.[8] Dr. Hekman continued: "So the [$]20 million, really optimistically two years after the breach, you discount that one year 40 percent, 20 times that brings you down to 12, right. . . . And then another year would bring you down to like 8. So [$]8 million, if you get [$]20 million two years from now it's only worth [$]8 [million]." Award at ¶ 80; SOF at ¶ 21.

The Arbitrator then states that "Hamilton's damages expert, Mr. Hock, agreed with the approach but not with the discount rate proposed by Dr. Heckman[.]" Award at ¶ 81; SOF at ¶ 22. As the portion of the Hearing transcript quoted by the Arbitrator shows—Mr. Hock agreed with Dr. Hekman's overall methodology but did not endorse the speculative assumption that MGH could expect to receive $20 million in replacement investment within approximately two years. *See* Award at ¶ 81; SOF at ¶ 22. Indeed, Hamilton designated Mr. Hock as an expert in the field of forensic accounting to review MGH's damages models—he offered no opinion (nor would he have been qualified to offer such an opinion) regarding the likely timing or amount of any replacement investment MGH might receive. SOF at ¶ 23. The MGH Report likewise did not include any such prediction. *See generally* MGH Rep. *Id.* Rather, as the Arbitrator quoted in the Award, Mr. Hock testified that his "only comment was going to be I don't necessarily disagree with the concept of *if* I get $20 million from two years from now, I don't know that I think you discount at the same 40 percent rate that you're doing the valuation [of MBI as a going concern], that's all." Award at ¶ 81 (emphasis added); SOF at ¶ 24. In contrast to the rate proposed by Dr. Hekman, Mr. Hock opined that a more appropriate discount rate would track the prime interest

---

[8] An excerpt of the transcript from the second day of the Hearing is attached to the Gavenman Declaration as <u>Exhibit D</u> and is cited herein as "<u>Ex. D at [__]</u>." Dr. Hekman's question to Mr. Abshier indicates that Mr. Abshier was the source of the $20 million-in-two-years estimate, but no such statement from Mr. Abshier is included in the transcript from either day of the Hearing and is therefore not part of the record, either before the Arbitrator or this Court.

rate—about eight percent at the time—with the possibility of an additional few percentage points to account for any additional risk. Award at ¶ 81; SOF at ¶ 25.

The Arbitrator purports to have "accept[ed] both sides' estimate of $20 million in two years discounted to the date of breach" as the market value of the Shares. Award at ¶ 82; SOF at ¶ 26.[9] Critically, in doing so, the Arbitrator noted: ***"The Tribunal acknowledges that this value is no more than a guess. It is, however, the only estimate offered in this case. The Parties had adequate opportunity to provide an estimate of market value. Instead, both sides opted to 'shoot the moon.'"*** Award at ¶ 82 n.28; SOF at ¶ 27. The Arbitrator rejected Dr. Hekman's proposed discount rate and instead credited Mr. Hock's proposed rate of the prime rate plus a few percentage points. Award at ¶ 82. SOF at ¶ 28. On that basis, the Arbitrator adopted a 10% discount rate, which, applied to the speculative $20 million hypothetical replacement investment, produced a present aggregate share value of $16,388.190.86. Award at ¶ 83; SOF at ¶ 30. The Arbitrator then subtracted that value and an additional offset from the Share price under the Investment Agreements to arrive at a final damages figure of $20,251,062.14. Award at ¶ 83; SOF at ¶ 31.

Based on that determination, the Arbitrator then found that MGH was the prevailing party under the arbitration clauses of the Investment Agreements because MGH "achieved a large damages award" despite being awarded only a small percentage (less than 7%) of the damages it sought. Award at ¶ 88; SOF at ¶ 32. On that basis, the Arbitrator awarded MGH its attorneys' fees and other costs. Award at ¶¶ 88–90; SOF at ¶ 32. Notably, though, the Arbitrator specifically excluded MGH's expert witness fees from the award of fees and costs, stating: ***"Because the***

---

[9] This is incorrect—neither Mr. Hock nor Hamilton estimated that MGH could have reasonably expected to receive $20 million two years after the breach. SOF at ¶ 26.

***<u>experts' work was not useful to the Tribunal, their fees and expenses are denied.</u>*** Award at ¶
89 n.32; SOF at ¶ 32.

     **D.**     *The Petition.*

MGH filed the Petition on September 25, 2023. ECF No. 1; SOF at ¶ 33. On October 17,
2023, MGH filed a Waiver of Service of the Summons executed by Hamilton's counsel pursuant
to Rule 4 of the Federal Rules of Civil Procedure. *See* ECF No. 8; SOF at ¶ 34. Hamilton takes no
issue with the factual allegations in the Petition, which set forth the basics of the dispute between
the Parties and the procedural history of the Arbitration. *See* ECF No. 1 at ¶¶ 1–16, 26–29.
Hamilton likewise does not challenge the Arbitrator's determination of liability, although
Hamilton disagrees with it. Rather, Hamilton disputes the legal conclusions stated in the Petition,
and files this motion to vacate the damages portion of the Award based on the Arbitrator's manifest
disregard of controlling Delaware law.

## LEGAL STANDARD

The Award is subject to the United Nations Convention on the Recognition and
Enforcement of Foreign Arbitral Awards (the "<u>New York Convention</u>"), 21 U.S.T. 2517; 300
U.N.T.S. 38 (Dec. 29, 1970) as an arbitral award arising from a commercial dispute "not entirely
between citizens of the United States." *PDV Sweeney, Inc. v. ConocoPhillips Co.*, No. 14-cv-5183
(AJN), 2015 WL 5144023, at *7 (S.D.N.Y. Sept. 1, 2015) (citation omitted). The Federal
Arbitration Act (the "<u>FAA</u>") implements the New York Convention and confers federal
jurisdiction upon petitions to confirm arbitration awards covered by it. *Id.* The New York
Convention does not specifically address vacatur of arbitral awards, but rather allows for review
as provided under the domestic laws of each signatory state within its jurisdiction. *Id.* Therefore,
both the FAA and domestic common law apply to this motion. *See id.* (applying FAA to award

subject to New York Convention). As the party moving to vacate an arbitration award, Hamilton

bears the burden of proof. *Elwell v. Raymond James Fin. Servs., Inc.*, --- F. Supp. 3d ---, No. 22-

cv-10125 (JGK), 2023 WL 5186275, at *7 (S.D.N.Y. Aug. 10, 2023).

The FAA sets forth certain statutory grounds upon which a court may vacate an arbitration

award, focusing primarily on instances in which a party obtains an award by fraud, the arbitrator

engages in corruption or other misconduct, or where no final award was made. *See* 9 U.S.C. §

10(a). MGH recites these statutory grounds as the "only" grounds for vacatur (Pet. at ¶ 20), which

is incorrect. Courts in the Second Circuit also recognize the common law doctrine that an

arbitration award may be vacated under the New York Convection and FAA if it was rendered in

manifest disregard of the law. *PDV Sweeney*, 2015 WL 5144023, at *4 (quoting *Banco de Seguros

del Estado v. Mut. Marine Offs., Inc.*, 257 F. Supp. 2d 681, 685 (S.D.N.Y. 2003)).

Although arbitral decisions are afforded great deference when reviewed by courts, a court

may vacate an arbitral award for manifest disregard of the law if it finds "'(1) the arbitrator[] knew

of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored

by the arbitrator[] was well defined, explicit, and clearly applicable to the case.'" *Combs v. Same

Day Delivery Inc.*, No. 1:22-cv-00520-MKV, 2023 WL 6162196, at *7 (S.D.N.Y. Sept. 20, 2023)

(quoting *Wallace v. Butler*, 378 F.3d 182, 189 (2d Cir. 2004)). Generally, courts vacate arbitral

awards for manifest disregard of the law in "exceedingly rare instances" and enforce arbitral

awards as long as "a ground for the arbitrator[s'] decision can be inferred from the facts of the

case" and "there is a barely colorable justification for the outcome reached." *Elwell*, 2023 WL

5186275, at *8 (citations omitted). This case presents one of the rare instances in which an arbitral award must be vacated for manifest disregard of the law.[10]

## ARGUMENT

### I. The Arbitrator Acted in Manifest Disregard of the Law by Awarding Damages That He Acknowledged Were No Better Than a Guess.

#### A. The Principles Governing this Case Are Black Letter Delaware Law That the Parties Placed Squarely Before the Arbitrator.

Fundamentally, this is a breach of contract case, and all of the governing principles of law are generally applicable to contract cases subject to Delaware law.[11] As the claimant, MGH had the burden of proving damages by a preponderance of the evidence. *Sky Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.*, 2020 WL 881544, at *14 (Del. Ch. Feb. 24, 2020) (cleaned up); *AlixPartners, LLP v. Mori*, 2022 WL 1111404, at * 11 (Del. Ch. Apr. 14, 2022). *See also* Post-Hearing Br. at 30.[12] MGH was not relieved of that burden by virtue of its status as the non-breaching party. *NetApp, Inc. v. Cinelli*, 2023 WL 4925910, at *25 (Del. Ch. Aug. 2, 2023). *See also* Post-Hearing Br. at 30. The standard measure of contract damages under Delaware law "is

---

[10] Courts in the Southern District of New York "treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *See Garrity v. Credit Suisse Sec. (USA) LLC*, 23 Civ. 1457 (KPF) & 23 Civ. 1830 (KPF), 2023 WL 7924726, at *6 (S.D.N.Y. Nov. 16, 2023); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). As such, a petitioner seeking to confirm an arbitral award has the burden of establishing that no dispute exists as to any material fact (*see Garrity*, 2023 WL 7924726, at *6), which requires submission of a statement of undisputed facts pursuant to Local Rule 56.1. *See id.* at 4 (noting court ordered petitioner to comply with Local Rule 56.1 in filing petition to confirm arbitration award). MGH has not filed a Local Rule 56.1 Statement in support of its Petition, which is a sufficient basis for the Court to deny MGH's Petition. LRCiv. 56.1(a).

[11] In the section that follows, Hamilton cites to the applicable caselaw as well as the portion of its briefing in which it presented the applicable law to the Arbitrator.

[12] The cases cited in this sentence were in Hamilton's initial brief, which has not been appended for the sake of brevity, but which Hamilton would be happy to provide if requested by the Court.

based upon the reasonable expectations of the parties *ex ante*." *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).[13]

Black letter Delaware law requires MGH to establish expectation damages with reasonable certainty. *Siga Tech., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1131 (Del. 2015). *See also* Second Br. at 24. Even where a plaintiff receives the benefit of the doubt with respect to uncertain damages, the plaintiff must provide a reasonable basis to arrive at a damages figure. *See eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, at *42 (Del. Ch. Sept. 30, 2013). *See also* Post-Hearing Br. at 30. "Mere speculation or conjecture" is not sufficient to prove damages with reasonable certainty. *See VH5 Capital, LLC v. Rabe*, 2023 WL 4305827, at *21 (Del. Ch. June 30, 2023) (holding plaintiff failed to prove damages and awarding only nominal damages). *See also* Post-Hearing Br. at 30. Delaware courts are unambiguous on this point: damages cannot be awarded "based on mere speculation." *Great Hills Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2020 WL 948513, at *20 (Del. Ch. Feb. 27, 2020) (cleaned up); *see also Medicalgorithmics S.A. v. AMI Monitoring, Inc.*, 2016 WL 440138, at *28 (Del. Ch. Aug. 18, 2016) (holding estimated damages for lost service fees were speculative because "the record [was] devoid of reliable evidence" to determine a reasonable estimate of future service fees). *See also* Second Br. at 24.

The relevant law in this dispute is not esoteric, and Hamilton's briefing of the above points plainly satisfies its burden of proving that the Arbitrator knew the relevant legal principles. *Compare Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 529 (4th Cir. 2007) (affirming denial of vacatur based on manifest disregard because movant could not point to any

---

[13] *Duncan* was presented to the Arbitrator in MGH's post-hearing briefing, which also has not been appended for the sake of brevity, but which Hamilton also would be happy to provide if requested by the Court.

evidence that the arbitrator was presented with the law that he purportedly disregarded) *and Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1276 (10th Cir. 2005) (holding movant failed to establish manifest disregard because it "cite[d] no controlling precedent and it fail[ed] to identify any evidence in the record" demonstrating manifest disregard). Rather, as demonstrated above, the law governing this dispute is subject to "widespread familiarity, pristine clarity, and irrefutable applicability" such that any departure must constitute manifest disregard of the law. *See McCarthy v. Citigroup Glob. Mkts. Inc.*, 463 F.3d 87, 95 (1st Cir. 2006) (distinguishing manifest disregard of the law from arguable legal error). By quite some distance, Hamilton presented the Arbitrator with "binding authority in a way that compels relief[.]" *Bear Stearns & Co., Inc., Bear Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 93 (2d Cir. 2005).

> **B.    The Arbitrator Plainly Recognized the Reasonable Certainty Requirement Because He Correctly Applied It to Reject MGH's Claim for Future Lost Profits.**

It is beyond dispute that the Arbitrator recognized and understood the law that he was required to apply (as set forth in Section I(A), *supra*) because he correctly stated and applied it in an earlier portion of the Award. The Arbitrator expressly stated: "As a matter of law . . . expectation damages are not available unless they can be proved with reasonable certainty." Award at ¶ 73 (citing *Callahan v. Rafail*, 2001 WL 283012, at *1 (Del. Super. Mar. 16, 2001); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2004 WL 1192602, at *4 (Del. Ch. May 28, 2004)). Indeed, the Arbitrator could not have said it better, explicitly noting that "[s]peculative damages are not recoverable. *See Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 517 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005) ('[D]amages which are considered too remote and speculative are not recoverable. Where actual pecuniary damages are sought, there must be evidence of their

existence and extent, and some data from which they may be computed,' *quoting* 24 Williston on Contracts, § 64:8 (4th Ed. 2002))." Award at ¶ 73 (citations and parenthetical in Award).

Applying these principles, the Arbitrator held MGH to its burden under the law: "MGH instead attempts to argue that where the fact of damages is established, certainty is not required (MGH Post-Hearing Brief at 9). However, as a case cited by MGH demonstrates, 'future lost profits must be established by "substantial evidence" and not by speculation.' *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *29 n.271 (Del. Ch. Feb. 18, 2010)." Award at ¶ 75. The Arbitrator ultimately correctly denied MGH's future lost profits damages under both such "damages scenarios" it advanced, finding "that MGH has not proved that its future lost profit damages are reasonably calculable or non-speculative." Award at ¶ 76; SOF at ¶ 16. Evidently the Arbitrator found Hamilton's caselaw authoritative, because the Arbitrator cited multiple decisions provided by Hamilton while ruling in its favor as to future lost profits. *Compare* Award at ¶ 73 (citing *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 517 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005)) *with* Post-Hearing Br. at 9 (same); *compare* Award at ¶ 74 (quoting *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 860 (Del. Ch. 2022) (citing *In re Heizer Corp.*, 1990 WL 70994, at *3 (Del. Ch. May 25, 1990) *with* Post-Hearing Br. at 34 (same). Between Hamilton's briefing and the Award itself, it is abundantly clear that the Arbitrator possessed all of the legal ammunition he needed to render the only permissible decision under Delaware law.

### C.   The Arbitrator Nonetheless Ignored the Reasonable Certainty Requirement Altogether When Considering the Market Value of the Shares.

It is not necessary for the Court to conduct a "full-bore legal and evidentiary appeal" (ECF No. 1 at ¶ 19) to see that the Arbitrator recognized Delaware's prohibition of speculative damages models and then summarily ignored it. Rather, the Arbitrator explicitly broadcast that he was doing exactly as such in the Award. The Arbitrator recited the proper rule (Award at ¶¶ 73–76); correctly

applied it to deny MGH's future lost profit damages (Award at ¶¶ 76); and then immediately ignored those same principles in awarding MGH contract damages based on a figure that is "very speculative" (Award at ¶ 80) and "no more than a guess" (Award at ¶ 82 n.28.) Award at ¶¶ 80–82. It simply is not possible to reconcile the Arbitrator's correct statement that "[s]peculative damages are not recoverable" (Award at ¶ 73) with his award of $20,251,062.14 in damages based on a "very speculative," "no more than a guess," computation. Award at ¶ 82 n.28. That is a paradigmatic expression of manifest disregard of the law. *Combs*, 2023 WL 6162196, at *7 (stating manifest disregard arises where arbitrator knows well-defined, explicit, and clearly applicable rule and either refuses to apply it or ignores it altogether).

Even if the Court were to examine the full record, it reveals that MGH put no evidence of market value before the Arbitrator that he could have justifiably relied on to render the damages award here. *See Garrity v. Credit Suisse Sec. (USA) LLC*, 23 Civ. 1457 (KPF) & 23 Civ. 1830 (KPF), 2023 WL 7924726, at *5 (S.D.N.Y. Nov. 16, 2023) (noting that arbitral award will stand as long as arbitrator had some "reasoning on which they could have justifiably rested their decision"); SOF at ¶¶ 14, 20. Again, the Arbitrator himself says that MGH did not present evidence of market value. The Arbitrator expressly found that "neither side's experts made an estimate of market value when presenting their opinions." Award at ¶ 80. MGH did not even hint at a proposed market value for the Shares until the Arbitrator asked Dr. Hekman at the Hearing to explain how he would estimate it, to which Dr. Hekman responded that "it would be very speculative." Award at ¶ 80. The Arbitrator was clear that this "guess" is "the *only* estimate offered in this case" and stressed that neither Party offered its own estimate. Award at ¶ 82 n.28 (emphasis in original); SOF at ¶¶ 14, 20, 27.

16

That much is confirmed by a review of the MGH Report, which contains no data or analysis concerning the market value of the Shares whatsoever. *See generally* MGH Rep. Indeed, the Arbitrator had such little use for the MGH Report and the testimony offered by Dr. Hekman and Mr. Abshier at the Hearing that he denied MGH's request for its expert fees. Award at ¶ 89 n.32. Such denial is particularly telling—the Arbitrator read the MGH Report, heard its experts' extensive testimony, and then denied even a single cent of compensation for those fees, based on his explicit assessment that Dr. Hekman's and Mr. Abshier's "work was not useful to the Tribunal." Award at ¶ 89 n.32.[14] The Arbitrator had no justification—let alone a "barely colorable" one—to issue a damages award based on the mere "guess" offered up by Dr. Hekman, especially when the Arbitrator found the work of MGH's experts to be worthless. Once again, Delaware law specifically prohibits such speculation. *E.g.*, *VH5 Capital, LLC*, 2023 WL 4305827, at *21; *Interim Healthcare, Inc.*, 884 A.2d at 517. MGH therefore placed nothing before the Arbitrator to arrive at any damages figure with the reasonable certainty required by Delaware law or for the Court to affirm the Arbitrator's reasoning. *See Tripi v. Prudential Sec., Inc.*, 303 F. Supp. 2d 349, 356 (S.D.N.Y. 2003) (declining to confirm award and remanding matter to arbitrator for clarification where petitioner had not "pointed to any facts in the record to support such a bizarre award").

The record otherwise contains nothing from which the Arbitrator could have independently estimated a market value for the Shares, as the Arbitrator himself explicitly conceded when he concluded that the Award was based on "no more than a guess." *See Tripi*, 303 F. Supp. 2d at 353–54 (noting that court must confirm arbitration award if justification for award can be inferred from facts of the case); SOF at ¶¶ 14, 20; Award at ¶ 82 n.28. In seeking damages based on future lost

---

[14] This denial stands in stark contrast to the Arbitrator's decision to award MGH more than $18,000 for the travel, food, and lodging costs for the Hearing without any evidentiary support. Award at ¶ 89 and n.32.

profits, Dr. Hekman relied on projections from a business valuation generated in January 2022 that the Arbitrator found "unreliable as a matter of fact." Award at ¶¶ 67–72. The Arbitrator unequivocally stated that "[t]here has been no showing that the projections had any basis in reality." Award at ¶ 70. All of the data and analysis MGH provided with respect to those projections was immaterial for another fundamental reason: as Mr. Hock distinguished at the Hearing, those data and projections were for a *business* valuation, not a valuation of the specific Shares offered by MGH. Award at ¶ 81. Moreover, Mr. Hock never adopted or endorsed the $20 million-in-two-years estimate—he simply agreed with Dr. Hekman's application of some discount rate to whatever substitute investment MGH might receive. Award at ¶ 81.

But it is not even necessary to look to the record to know that it is bereft, because the Arbitrator specifically disavowed that it contains anything from which he could have inferred a market value. Dr. Hekman's "guess" is the "*only* estimate" of market value "offered in this case." Award at ¶ 82 n.28 (emphasis in original). Again, the Arbitrator found the MGH Report and MGH's expert's testimony was worthless. Award at ¶ 89 n.32. If there were any doubt whether the record contains some independent basis for the damages award, the Arbitrator negated it. Taking the Arbitrator at his word, then, there is no "barely colorable justification" for the damages award that could be inferred from the record. *See Elwell*, 2023 WL 5186275, at *9 (holding damages award could be inferred from evidence before arbitral panel based on testimony regarding expert's damages model).

Quite simply, the Arbitrator knew that he could not award damages that were "no more than a guess," but did so anyway. This is an open-and-shut case—the damages portion of the Award must be vacated. *See Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 139–43 (2d Cir. 2007) (vacating award and holding arbitration panel manifestly disregarded

law for the second time, where panel ignored federal law mandating award of attorneys' fees to claimant despite being briefed on rule, then appeared to misapply the same rule on remand after prior vacatur).

## II. **MGH Is Entitled to No More Than Nominal Damages Under Established Delaware Law.**

Having failed to prove any reasonably specific amount of damages, Delaware law is clear that MGH is entitled only to nominal damages. *See VH5 Capital*, 2023 WL 4305827, at *21–23 (holding plaintiff failed to prove contract damages and awarding only nominal damages); *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *11–12 (Del. Ch. Apr. 27, 2009) (awarding only nominal damages where plaintiff's expert failed to show damages with required certainty); *see also Oliver v. Boston Univ.*, 2006 WL 1064169, at *24–25 (Del. Ch. Apr. 14, 2006) (denying request for compensatory damages and awarding only nominal damages where expert failed to consider key characteristics of securities at issue). *See also* Post-Hearing Br. at 30–31. As demonstrated above, MGH's "guess" cannot satisfy its burden, and MGH is entitled only to nominal damages. *See EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742592, at *10 (Del. Ch. Dec. 12, 2006) (awarding nominal damages where plaintiff proved breach of contract but failed to show any actual damages). *Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *15 (Del. Ch. Dec. 15, 2005) (awarding only nominal damages where plaintiff failed to meet burden of proving actual damages).[15]

With the imposition of nominal damages, the Arbitrator's award of fees and costs to MGH as the prevailing party also must be revisited. The Arbitrator determined that MGH was the

---

[15] Hamilton provided the Arbitrator with *VH5* and *Penn Mart* in its Post-Hearing Brief. Post-Hearing Br. at 30, 39. Hamilton did not include *EDIX* in its various briefs but did provide the Arbitrator with the Delaware Supreme Court's decision affirming *EDIX* in an appeal on different grounds: *Mahani v. EDIX Media Grp., Inc.*, 925 A.2d 242 (Del. 2007). Post-Hearing Br. at 48.

prevailing party under the arbitration clauses of the Investment Agreements because MGH

"achieved a large damages award" despite being awarded only a small percentage of the damages

it sought. Award at ¶ 88. With the reduction of MGH's damages from more than $20 million to

six cents, *see EDIX*, 2006 WL 3742592, at *10 (noting six cents is customary nominal damages

under Delaware common law), the Arbitrator must reexamine whether MGH remains the

prevailing party and issue an entirely new award based on nominal damages.

**CONCLUSION**

For the foregoing reasons, the Award must be vacated with respect to damages and this

matter remanded to the Arbitrator with instructions to issue an award to MGH of not more than

nominal damages and to reconsider the amount of attorneys' fees, costs, and administrative fees

awarded to MGH in light of this determination, as well as any other and further relief that is

necessary and proper.

Dated: December 6, 2023                        Respectfully submitted,

                                               **SCHULMAN BHATTACHARYA, LLC**

                              By:     /s/ Jeffrey S. Gavenman
                                      Jeffrey S. Gavenman
                                      Schulman Bhattacharya, LLC
                                      6116 Executive Boulevard, Suite 425
                                      North Bethesda, MD 20852
                                      and
                                      3445 Winton Place, Suite 228
                                      Rochester, NY 14623
                                      Telephone: (240) 356-8553
                                      Email: jgavenman@schulmanbh.com

                                      *Counsel for Respondent Hamilton M&A Fund, SP*