UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MERCANTILE GLOBAL HOLDINGS, INC.**<br>    *Petitioner,*<br><br>v.<br><br>**HAMILTON M&A FUND SP,**<br>    *Respondents.* | **Case No. 1:23-cv-08446-DEH** |

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO VACATE
<u>ARBITRATION AWARD</u>**

CROWELL & MORING LLP

Mark Klapow
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 624-2500
MKlapow@crowell.com

*Attorney for Petitioner*

December 22, 2023

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1
II.  BACKGROUND ................................................................................................................... 3
III. LEGAL STANDARD ........................................................................................................... 5
IV.  ARGUMENT ........................................................................................................................ 6
   A.   **Hamilton Did Not Challenge The $20 Million Valuation As Too Speculative In Arbitration, and Therefore Cannot Do So For the First Time Here.** ................................. 6
   B.   **Hamilton Cannot Show That There Is No Colorable Basis For The Award.** ............ 8
   C.   **Hamilton Has Not Established Manifest Disregard Of Law.** ................................... 11
      1.   Under Delaware Law, A General Damages Award Requires Reasonable Certainty Only With Respect to the Fact of Damages, Not the Amount. ............................................. 12
      2.   Arbitrator Skulnik's Determinations Relating To The $20 Million Reduction Cannot Be Challenged As A "Manifest Disregard of the Law." ......................................................... 14
V.   CONCLUSION ................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amaysing Techs. v. Cyberair Commc'ns, Inc.*,
　No. Civ.A. 19890, 2004 WL 1192602 (Del. Ch. May 28, 2004) ............................................12

*Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*,
　867 F.2d 130 (2d Cir. 1989)....................................................................................................11

*Beijing Shougang Mining Inv. Co. v. Mongolia*,
　11 F.4th 144 (2d Cir. 2021) ......................................................................................................8

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
　No. 15 Civ. 7428 (PAE), 2016 WL 3913599 (S.D.N.Y. July 15, 2016) ..................................3

*Callahan v. Rafail*,
　No. Civ.A. 99C-02-024, 2001 WL 283012 (Del. Super. Mar. 16, 2001) ...............................12

*Matter of Daesang Corp. v. NutraSweet Co.*,
　167 A.D.3d 1 (N.Y. App. Div. 2018) .....................................................................................12

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
　333 F.3d 383 (2d Cir.2003).....................................................................................................11

*Elwell v. Raymond James Fin. Servs.*,
　No. 22-cv-10125 (JGK), 2023 WL 5186275 (S.D.N.Y. Aug. 10, 2023)..................................5

*Forall USA, Inc. v. Sarah LLC*,
　No. 21 Civ. 2721 (VM), 2021 WL 3604758 (S.D.N.Y. Aug. 12, 2021) ................................14

*Hall Street Associates, L.L.C. v. Mattel, Inc*,
　552 U.S. 575 (2008).............................................................................................................5, 11

*Huzhouu Chunangtai Rongyuan Inv. Mgmt. Partnership v. Qin*,
　No. 21 Civ. 9221 (KPF), 2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022) .................................6

*InterDigital Comm. Corp. v. Nokia Corp.*,
　407 F.Supp.2d 522 (S.D.N.Y. 2005).......................................................................................10

*Landau v. Eisenberg*,
　922 F.3d 495 (2d Cir. 2019)......................................................................................................8

*Miss Universe L.P., LLLP v. Monnin*,
　952 F. Supp. 2d 591 (S.D.N.Y. 2013).....................................................................................12

*New York Hotel & Motel Trades Council v. Hotel St.*,
    988 F. Supp. 770 (S.D.N.Y. 1997) ...................................................................................... 6

*NFL Mgmt. Council v. NFL Players Ass'n*,
    820 F.3d 527 (2d Cir. 2016) ............................................................................................ 5, 8

*Polin v. Kellwood Co.*,
    103 F. Supp. 2d 238 (S.D.N.Y. 2000), *aff'd*, 34 Fed. App'x 406 (2d Cir. 2002) ................. 9, 14

*Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199*,
    116 F.3d 41 (2d Cir. 1997) .................................................................................................. 10

*Seaport Global Holdings LLC. v. Petaquilla Minerals Ltd.*,
    No. 19 Civ. 9347 (ER), 2020 WL 2747729 (S.D.N.Y. May 27, 2020) .................................. 3

*Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*,
    No. 1:23-cv-991-GHW, 2023 WL 6276691 (S.D.N.Y. Sept. 26, 2023) ................................ 11

*SIGA Technologies, Inc v PharmAthene, Inc*,
    132 A.3d 1108 (Del. 2015) .................................................................................................. 13

*Trustees of the New York City Dist. Council of Carpenters Pension Fund v.*
    *Harbor Island Contracting Inc.*,
    No. 14–cv–9507 (AJN), 2015 WL 5146093 (S.D.N.Y. Aug. 31, 2015) ................................ 9

*Wackenhut Corp. v. Amalgamated Local 515*,
    126 F.3d 29 (2d Cir. 1997) .................................................................................................... 6

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004) ................................................................................... 5, 9, 11, 14

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
    304 F.3d 200 (2d Cir. 2002) ........................................................................................... 10, 12

*Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*,
    103 F.3d 9 (2d Cir. 1997) ................................................................................................. 5, 8

*York Research Corp. v. Landgarten*,
    927 F.2d 119 (2d Cir. 1991) .................................................................................................. 6

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) .................................................................................................. 12

**Statutes**

9 U.S.C. § 9 ................................................................................................................................ 11

9 U.S.C. § 10(a)(1)-(4) ............................................................................................................... 11

Petitioner Mercantile Global Holdings, Inc. ("MGH") submits this Opposition to Hamilton M&A Fund, SP's ("Hamilton") Motion to Vacate Arbitration Award (Dkt. 11), stating as follows:

## I. INTRODUCTION

Hamilton's motion to vacate does not challenge the Arbitrator's liability determination, only his calculation of damages. Arbitrator Skulnik determined Hamilton breached the agreements at issue by failing to pay the $37 million purchase price for MGH's shares. At Hamilton's request, Arbitrator Skulnik reduced that amount for the market value of the shares, which the Arbitrator determined, based on the testimony, was $20 million. Now Hamilton argues the award should be reduced to zero because the $20 million reduction was "too speculative." That argument is odd, to say the least, because Hamilton itself sought and benefited from that reduction. In logic, ignoring the $20 million reduction should result in an award of the full $37 million contract price. Moreover, by arguing that a damages variable is too speculative, Hamilton is not truly challenging Arbitrator Skulnik's statement of the law, but rather his application of the law to the particular facts, including the Arbitrator's determinations about the weight of evidence (which cannot be argued before this Court).

The standard of review applicable to review of an arbitration award is among "the most deferential" in the law. Hamilton's argument now that a single variable used in a damages calculation was too speculative does not satisfy that standard. Hamilton's motion should be denied for these reasons:

<u>First</u>, Hamilton did not challenge the $20 million valuation in the arbitration. The law does not permit it to do so for the first time here.

<u>Second</u>, the Court must confirm the award if the arbitrator "offered even a barely colorable justification for the outcome reached." As to the $20 million reduction, Arbitrator Skulnik held:

1

> The Tribunal accepts <u>both sides' estimate</u> of $20 million in two years discounted to the date of breach September 16, 2022.

Using an "estimate" by "both sides" to address one variable in a calculation of general damages is without a doubt sufficient to provide a "barely colorable justification" on the face of the award for the reduction. The Court is not allowed to dig into the record in search of inconsistency or to reconsider evidence.

<u>Third</u>, the doctrine of last resort that Hamilton tries to invoke – "manifest disregard of law" – simply has no application in this situation. Hamilton does not identify a single case in this or any other jurisdiction in which this doctrine was used successfully to vacate an arbitration award on the grounds that damages were too speculative. Hamilton does not even identify a case in which an ICDR arbitration was vacated under this doctrine.

Moreover, to meet the manifest disregard standard, Hamilton would have to show an error of law that is so clear and obvious that it could be "readily and instantly perceived by the average person qualified to serve as an arbitrator." Hamilton failed to show that Arbitrator Skulnik ignored applicable Delaware damages law, much less that he did so willfully and obviously. Instead, Hamilton asks the Court to second-guess the arbitrator's evidentiary assessment by pointing to an allegedly inconsistent footnote and inviting a review of the record. That is not permissible. And precedent makes clear that errors of fact or in the application of law to fact are not "manifest disregard of law." To the contrary, the strong public policy and statutory scheme favoring arbitration and the finality of arbitral awards prohibits the detailed parsing of the record that Hamilton requests here.

For the reasons stated in MGH's petition and discussed in more detail below, this award should be confirmed and Hamilton's motion to vacate should be denied.

## II.     BACKGROUND

MGH filed its AAA expedited arbitration demand under the agreements on September 30, 2022.  Hamilton repeatedly advanced frivolous arguments and swapped out counsel several times to secure delays.  On April 19, 2023, Steven Skulnik was appointed arbitrator without objection.

Arbitrator Skulnik is a well-known and highly credentialed arbitrator in the New York area.  He has more than 35 years' experience practicing in domestic and international arbitration and litigation.  Arbitrator Skulnik's online bio highlights over two dozen AAA arbitrations, including several that were confirmed by this court.  *Seaport Global Holdings LLC. v. Petaquilla Minerals Ltd.*, No. 19 Civ. 9347 (ER), 2020 WL 2747729, *5 (S.D.N.Y. May 27, 2020); *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2016 WL 3913599, *24 (S.D.N.Y. July 15, 2016).  No court has overturned one of his awards.

Arbitrator Skulnik gave the parties ample opportunity to develop and present their case.  He held hearings with counsel, set a schedule, and allowed pre-hearing briefs.  Hamilton submitted two rounds of pre-hearing briefs and an expert report.  A two-day hearing was held in New York in July.  Hamilton had four outside lawyers present.  Three witnesses and three experts testified.  Hamilton's counsel argued and answered questions.  After the hearing, Arbitrator Skulnik allowed additional briefing.  Hamilton submitted 80 pages of post-hearing briefs.

Arbitrator Skulnik issued a 31-page final award on September 13, 2023.  The Analysis section therein is divided into five parts:  Parts A, B, and C address MGH's liability claim and defenses, Part D rejected MGH's claim for lost profits, and Part E allowed for general damages reduced by the $20 million market value of the shares, which Hamilton challenges here.

3

**Lost Profits, Part D – Which Hamilton Does *Not* Challenge**

Part D of the award is titled: "Has MGH Proved Future Lost Profit Damages?" Therein, at Paragraph 73, Arbitrator Skulnik used the phrase "reasonable certainty" and cited two lost profit cases. At Paragraphs 74 and 75, Arbitrator Skulnik further explained this heightened standard:

> Delaware courts regularly refuse to award damages based on the lost profits from a new business, deeming evidence of lost profits to be too speculative, uncertain, and remote when there is no history of prior profits." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 860 (Del. Ch. 2022) [citation omitted].
>
> … as a case cited by MGH demonstrates, "future lost profits must be established by 'substantial evidence' and not by speculation." *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *29 n.271 (Del. Ch. Feb. 18, 2010).

Applying that heightened standard to the facts, Arbitrator Skulnik determined:

> that the projections in the McKenzie report are an insufficient basis to award lost profits under Delaware law, as discussed in the cases referenced above. For these reasons, the Tribunal finds that MGH has not proved that its future lost profit damages are reasonably calculable or non-speculative.

**General Damages, Part E – Which Hamilton Does Challenge**

Hamilton's challenge to the award is limited to Part E, which is six paragraphs in length. At Paragraph 78, Arbitrator Skulnik explained an estimate was required to determine the value of the shares that would have been conveyed to Hamilton because MGH had been unable to resell those or comparable shares so far:

> MGH is looking for new investors and will issue shares that are similar to those to have been issued to Hamilton. For those shares, MGH will receive money. Had such a transaction happened already, the money received for those shares would have been the resale price to be deducted from the contract price. There having been no such transaction, the market value, to be deducted from the contract price, must be estimated.

At Paragraph 79, Arbitrator Skulnik rejected Hamilton's circular argument the market value for the shares should be set at $37 million because that is what Hamilton contracted to pay for them and, thus, that there were no damages:

> Had the shares been worth the contract price, another purchaser would have stepped in. Clearly the shares were worth $37 million *to Hamilton*, but there is no proof that any other market participant valued the investment at that price.

At Paragraphs 80 and 81, Arbitrator Skulnik cited and quoted from the expert witness testimony of MGH's expert Dr. Hekman and Hamilton's expert Mr. Hock regarding the value of the shares.

At Paragraph 82, Arbitrator Skulnik determined:

> The Tribunal accepts both sides' estimate of $20 million in two years discounted to the date of breach, September 16, 2022. The Tribunal credits Mr. Hock's explanation that the discount rate for a lump sum investment in two years should be close to the company's cost of funds, *i.e.,* the prime rate plus a few percentage points.

Arbitrator Skulnik then reduced the contract price by this amount and made other adjustments.

Hamilton did not seek reconsideration of that award or take further action in arbitration to challenge general damages or, indeed, any part of the arbitration award. Prior to the instant motion, indeed, Hamilton did not challenge the award in court.

### III.  LEGAL STANDARD

Section 9 of the Federal Arbitration Act requires that courts confirm arbitration awards. 9 U.S.C. § 9. As the Supreme Court has stated, Section 9 "carries no hint of flexibility." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). "On application for an order confirming the arbitration award, the court 'must grant' the order …." *Id.* "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*

5

A "party seeking to vacate an arbitration award under the FAA faces a formidable task." *Elwell v. Raymond James Fin. Servs.*, No. 22-cv-10125 (JGK), 2023 WL 5186275, *7 (S.D.N.Y. Aug. 10, 2023). A court's review of an arbitration award is "narrowly circumscribed and highly deferential – indeed, among the most deferential in the law." *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). "[T]he showing required to avoid summary confirmation of an arbitration award is high … and a party moving to vacate the award has the burden of proof." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). Indeed, the "party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls with a very narrow set of circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal citation omitted).

### IV. ARGUMENT

#### A. Hamilton Did Not Challenge The $20 Million Valuation As Too Speculative In Arbitration, and Therefore Cannot Do So For the First Time Here.

Hamilton cannot advance the argument that the $20 million reduction is too speculative without first giving the arbitrator an opportunity to hear the issue. Permitting a party to oppose confirmation of an award based on a claim that it did not raise before the arbitrator would offend the general principle "that a party cannot remain silent, raising no objection during the course of the arbitration proceedings, and when an award adverse to him has been handed down complain …" *York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991) (internal citation omitted). If for no other reason, "[b]y failing to make this argument in the arbitration," Hamilton has "forfeited [its] right to make it in the confirmation proceeding." *Huzhuou Chunangtai Rongyuan Inv. Mgmt. Partnership v. Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277, *10 (S.D.N.Y. Sept. 26, 2022); *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32 (2d Cir. 1997) (refusing to consider argument raised for first time before district court on a petition to

6

vacate arbitral award); *New York Hotel & Motel Trades Council v. Hotel St.*, 988 F. Supp. 770, 779 (S.D.N.Y. 1997) (prohibiting party from opposing confirmation based on argument not presented to arbitrator; litigants not "permitted to sandbag … the Arbitrator … by withholding [their] objections" [until the] district court [is petitioned] for confirmation").

During the course of the arbitration, evidence was heard on the $20 million market value. MGH argued and presented evidence that the shares could not be resold, while Hamilton argued and presented expert testimony that the shares should be valued at $37 million since that is what Hamilton agreed to pay. The arbitrator acknowledged that evidence, but then directly engaged the parties' experts in colloquy about how to estimate the market value of the shares discounted to present dollars for a damages award. MGH's expert testified to $20 million. Hamilton's expert then testified about that $20 million.

Arbitrator Skulnik cautioned Hamilton during the hearing about ignoring the issue: "And so on your side you've given us nothing on market value. They've given us evidence on market value saying we tried to sell and nobody will buy." Hamilton, however, elicited no testimony or evidence that this amount was too speculative at the hearing. Hamilton could have cross-examined MGH's experts on the factual basis for the $20 million but elected not to, perhaps believing that this would weaken its own damages case. Hamilton likewise did not question its own expert on the $20 million, perhaps because its own expert did not believe the amount was too speculative. Hamilton also did not advance this position during the extensive lawyer argument that followed the testimony at the hearing.

After the hearing, Arbitrator Skulnik invited the parties to submit post-hearing briefs. At that time, he asked the parties to address the issue of damages and any reduction in the contract price. Hamilton submitted more than 80 pages of briefing after the hearing, but none of it

7

addressed the basis for the $20 million valuation. Nowhere in Hamilton's post-hearing briefs is the argument that the testimony regarding a $20 million valuation was inadmissible, speculative, of insufficient weight, or that using it would be contrary to law. Even after the Arbitrator issued the award relying on the $20 million valuation, Hamilton did not move to reconsider or vacate on the grounds that it advocates here. That argument cannot be made for the first time here.

### B. Hamilton Cannot Show That There Is No Colorable Basis For The Award.

In any event, the award readily meets the legal standard for confirmation by this Court. Arbitration is a highly effective and efficient means for parties to resolve disputes quickly without imposing a strain on the otherwise busy courts. Central to that bargain is the notion of finality. Allowing proceedings to confirm arbitration award like this one to become an exercise in second-guessing by courts is antithetical to the arbitration bargain and the public and statutory policies favoring arbitration. It is for this reason that the FAA and courts apply a highly deferential standard of review and mandate summary confirmation except in the most egregious instances of abuse.

Thus, in this Circuit, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)). Confirmation is required so long as the arbitrator is "arguably construing or applying the [matter at hand] and acting within the scope of his [or her] authority...." *NFL Mgmt. Council*, 820 F.3d at 532 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). An arbitration award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (internal quotation omitted). A "barely colorable justification" for an arbitration award exists if the arbitrator presents

reasoning on which the award "could have justifiably rested" even if it did not. *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13–14.

After reviewing the evidence and hearing argument, Arbitration Skulnik concluded:

> The Tribunal accepts both sides' estimate of $20 million in two years discounted to the date of breach September 16, 2022.

On its face, this statement indicates that the Arbitrator determined that a $20 million reduction was credible as an "estimate" by "both sides."

Hamilton does not and cannot argue that using an "estimate" by "both sides" as a damages variable is an insufficient justification for calculating damages. Instead, Hamilton now insists that (1) the arbitrator's conclusion was wrong and (2) is undermined by a footnote within the award. Neither is a valid basis to vacate the arbitration award.

In its motion, Hamilton argues the admissibility and weight of the evidence, first noting testimony by MGH's expert that certain assumptions around a $20 million capital raise in two years would be "speculative" (Resp't Mot. to Vacate, ECF 12, at 17-18), and then offering a different reading of its own expert's testimony, positing that he did not actually "adopt" that valuation. *Id.* at 18. In so doing, Hamilton challenges Arbitrator Skulnik's conclusion that the $20 million value was an "estimate" by "both sides" and a sufficient basis (from an evidentiary perspective) upon which to calculate a reduction.

The Court may not reweigh the evidence in its summary review of an arbitration award. In no event can a disagreement with the arbitrator's "assessment of the evidence and its conclusions [be] sufficient to vacate an arbitration award." *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262 (S.D.N.Y. 2000), *aff'd*, 34 Fed. App'x 406 (2d Cir. 2002); *see also Wallace*, 378 F.3d at 193 ("A federal court may not conduct a reassessment of the evidentiary record… upon the principle that an arbitral award may be vacated when it runs contrary to the strong evidence favoring the party

9

bringing the motion to vacate the award."). When it comes to the application of law to the facts, which all damages questions are by definition, the arbitrator's conclusions cannot be revisited. *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Harbor Island Contracting Inc.*, No. 14–cv–9507 (AJN), 2015 WL 5146093, *2 (S.D.N.Y. Aug. 31, 2015).

Hamilton then points to footnote 28 in the award, where Arbitrator Skulnik used the word "guess" in describing $20 million reduction. Before this Court, Hamilton argues this means that the valuation had no factual or evidentiary basis at all. However, Hamilton does not try to square this reading with the *four separate times* that Arbitrator Skulnik described the $20 million reduction as an "estimate,"[1] or offer any authority establishing that relying on estimates is an inappropriate method of calculating the market value of shares.

Ultimately, the "barely colorable justification" standard requires confirmation if the Court can find *any* arguable justification for the award. It does not require the Court to find that the award has no inconsistencies or contrary indicators. Simply put, "internal inconsistencies within an arbitral judgment are not grounds for vacatur." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 211 (2d Cir. 2002); *see also Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (holding that "[i]nternal inconsistencies in the opinion are not grounds to vacate the award" since "the arbitrator explained his conclusions in

---

[1] In Paragraph 78 of his opinion, Arbitrator Skulnik made clear that he sought to determine a reasonable market value for MGH's shares, by stating: "the market value to be deducted from the contract price must be <u>estimated</u>." Paragraph 80 notes that he asked the parties' experts to identify a sound methodology for estimating market value if they were acting as an advocate for the other side: "How would you <u>estimate</u> it?" At Paragraph 82, Arbitrator Skulnik then plainly states his conclusion, based on the testimony he elicited at trial: "The Tribunal accepts both sides' <u>estimate</u> of $20 million." Even in the footnote emphasized by Hamilton, Arbitrator Skulnik defends his determination as to the appropriate deduction as "the *only* <u>estimate</u> offered in this case." Perhaps Arbitrator Skulnik meant the $20 million reduction was an *educated guess*. In any event, it matters not because, as discussed herein, the award provides a colorable justification: the $20 million is based on "the parties' estimate."

terms that offer a colorable justification for the outcome reached"); *InterDigital Comm. Corp. v. Nokia Corp.*, 407 F.Supp.2d 522, 530 n.5 (S.D.N.Y. 2005) (denying motion to vacate award and explaining that "internal inconsistencies within an arbitral judgment are not grounds for vacatur") (internal citation omitted). In other words, in a confirmation proceeding like this, the Court is merely looking for one "barely colorable justification" for the award.

Arbitrator Skulnik furnished a colorable justification for the $20 million reduction: namely that it was an "estimate" by "the parties." That is the start and end of the summary confirmation.

### C. Hamilton Has Not Established Manifest Disregard Of Law.

Even if this were not so, Hamilton fails to meet the extreme high bar for manifest disregard. Hamilton seeks to vacate the award here pursuant to the UN Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act. Both embed a strong presumption of finality and confirmation of arbitral awards, and contain a carefully crafted, narrow set of exceptions to confirmation that are delineated by statute and case law.[2] Hamilton argues none of those exceptions, instead relying on a judicially-created exception of last resort: "manifest disregard of law." *See, e.g., Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*, No. 1:23-cv-991-GHW, 2023 WL 6276691, *7 (S.D.N.Y. Sept. 26, 2023).

The manifest error doctrine is controversial[3] and extremely limited in application. *Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 133 (2d Cir.

---

[2] Section 10(a) of the FAA sets forth only four grounds to vacate: (1) "corruption, fraud, or undue means" in the procurement of the award; (2) "evident partiality or corruption in the arbitrators"; (3) misconduct by the arbitrators; or (4) if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4).

[3] In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court called into question whether the doctrine of manifest disregard was an independent ground to vacate an award or was encompassed by the recognized grounds for vacatur in the FAA. *Hall Street Associates, L.L.C. v.*

11

1989). This "doctrine of last resort" requires more than a simple error or a failure to understand or apply the law. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir.2003)*. Instead, the movant must show, by a preponderance, that "(1) the arbitrator knew of a governing legal principle and *deliberately* refused to apply it, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." *Wallace*, 378 F3d at 189 (internal quotation omitted) (emphasis added). Proof that the arbitrator was aware of the governing legal principal but failed to apply it "is not enough … there must also be a showing of intent." *Westerbeke Corp.*, 304 F.3d at 217. That is why manifest disregard is "limited to the rare occurrences of apparent egregious impropriety [by] the arbitrators." *Matter of Daesang Corp. v. NutraSweet Co.*, 167 A.D.3d 1, 16 (N.Y. App. Div. 2018). To constitute "manifest disregard," the error must have been so obvious that it is "capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 24 (citation omitted); *see also Miss Universe L.P., LLLP v. Monnin*, 952 F. Supp. 2d 591, 609 (S.D.N.Y. 2013). That showing has not been made here.

    1.    Under Delaware Law, A General Damages Award Requires Reasonable Certainty Only With Respect to the Fact of Damages, Not the Amount.

In its motion, Hamilton claims that Arbitrator Skulnik "recognized the reasonable certainty requirement" for all facets of damages, but then "nonetheless ignored the reasonable certainty requirement altogether when considering the market value of the shares." This is misdirection, and misstates both the award and the law.

In the arbitration award, Arbitrator Skulnik used the words "reasonable certainty" once: specifically, in Part D of his decision, where he addressed MGH's claim for lost profits. Delaware,

---

*Mattel, Inc*, 552 U.S. 575, 585 (2008). The 5th, 8th, and 11th Circuits have interpreted *Hall Street* as holding that manifest disregard is not an independent ground for vacatur.

12

like most states, imposes a heightened standard of proof for an award of lost profits. Arbitrator Skulnik cited to two lost profit cases after this reference to "reasonable certainty."[4] The subsequent paragraphs of Part D go on to further explain this heightened standard of proof and explain why, in his view, there was insufficient evidence to justify the requested lost profits award.

In contrast, Arbitrator Skulnik did not use the words "reasonable certainty" in Part E of the award, which addresses general damages (including the $20 million reduction challenged here). Thus, Hamilton's assertion that Arbitrator Skulnik acknowledged a generally applicable "reasonable certainty requirement" for all facets of damages and then willfully failed to apply it is clearly incorrect. There was no "manifest disregard" of a "reasonable certainty requirement" when Arbitrator Skulnik determined general damages, because there is no such requirement under governing Delaware law to calculate the amount of general damages, or a reduction therein.

In Delaware, although the injured party must prove that it was <u>actually damaged</u> with reasonable certainty, "[t]he amount of damages can be an estimate." *SIGA Technologies, Inc v PharmAthene, Inc*, 132 A.3d 1108, 1111 (Del. 2015). As the Delaware Supreme Court held, "the injured party need not establish the amount of damages with precise certainty where the wrong has been proven and injury established." *Id.* Instead, "where the existence of damages is certain, and the only uncertainty relates to the amount… the burden of uncertainty as to the amount of damages falls upon the wrongdoer." *Id.* at 1131, n. 132 (citation omitted).

---

[4] In *Callahan v. Rafail*, No. Civ.A. 99C-02-024, 2001 WL 283012, at *1 (Del. Super. Mar. 16, 2001), a Delaware court rejected as too speculative the projected winnings in the future of a race horse. *Id.* (To "ask the jury to speculate as to whether a race horse would earn $36,955 or $109,938 … clearly violates the rule against awarding lost profits that are not known with certainty."). In *Amaysing Techs. v. Cyberair Commc'ns, Inc.*, No. Civ.A. 19890, 2004 WL 1192602, at *4 (Del. Ch. May 28, 2004), a Delaware court rejected as too speculative the projected future profits from a loan to develop new technology. *Id.* ("With its technology still undeveloped, [plaintiff's] ability to prove lost profit damages would be highly doubtful [especially] because there is no established market for the technology ….").

13

Here, MGH indisputably established it was damaged by Hamilton's failure to perform (in that it did not receive the $37 million it would otherwise have received, had Hamilton fully performed). Hamilton, as the wrongdoer, bears any risk around imprecision in the deduction Hamilton sought for the value of the shares that could not be conveyed.[5] And in no event is Arbitrator Skulnik out of step with Delaware law when he relied on an estimate of the value of MGH's shares in making the deduction that Hamilton sought here.

> 2. Arbitrator Skulnik's Determinations Relating To The $20 Million Reduction Cannot Be Challenged As A "Manifest Disregard of the Law."

To prove manifest disregard of the law, Hamilton would have to show Arbitrator Skulnik's determination of a $20 million reduction is contrary *to law*. But Hamilton does not show, nor could it, that calculating the market value of MGH's shares based on an "estimate" by "both parties" is contrary to law, much less that it reflects *a manifest error of law*.

Instead, what Hamilton really argues here is that Arbitrator Skulnik's conclusions were contrary *to the evidence*. But "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." *Wallace*, 378 F.3d at 194 (citation omitted). In seeking to vacate, a party's disagreement with "the panel's assessment of the evidence and its conclusions is not sufficient to vacate an arbitration award" under either the statutory provisions of the FAA or for manifest disregard of the law. *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262 (S.D.N.Y. 2000), *aff'd*, 34 Fed. App'x 406 (2d Cir. 2002). Indeed, an arbitrator's application of the law to facts *cannot* be legal error, and is not grounds to vacate an award. *See e.g. Forall USA, Inc. v. Sarah LLC*, No. 21 Civ. 2721 (VM), 2021 WL 3604758, *2 (S.D.N.Y.

---

[5] The $20 million reduction applied is near the midpoint of the market value offered by the parties before and in the hearing. A troubling implication of Hamilton's position that all damages variables must be proven with reasonable certainty is that the arbitrator (or fact finder) could never just split the difference between the parties' positions because that conclusion is not independently supported in the evidence. Such a view, however, is without precedent.

14

Aug. 12, 2021) ("Respondents challenge whether this standard was met here, their argument is not that the arbitrator exhibited 'manifest disregard for the law,' but instead that the arbitrator misapplied the law to the facts, an issue plainly beyond the Court's jurisdiction.").

By arguing now that the $20 million reduction is speculative, Hamilton is really challenging the Arbitrator's implicit determinations as to the admissibility and weight of the evidence. The fact that uncertainty around the market value of MGH's shares was acknowledged by both MGH's expert and the tribunal is not surprising given that attempts to sell the shares were unsuccessful. Those acknowledgements do not, however, foreclose the Arbitrator from concluding that the testimony at trial was a sufficient basis upon which to base the $20 million deduction from the award of general damages.

Moreover, as noted, Hamilton is the wrongdoer here, and Delaware law provides that any uncertainty in the amount of damages be resolved against the wrongdoer once the indisputable fact of damage was proved here. Ultimately, Arbitrator Skulnik concluded in the context of the arbitration that a $20 million estimate from the experts was competent evidence, and an adequate basis for reducing MGH's $37 million damage award as Hamilton requested. This determination comes nowhere close to a willful and egregious refusal by the Arbitrator to apply obvious, applicable law, as is required by the doctrine of law Hamilton seeks to invoke.

Hamilton would have this Court treat its motion to vacate as an appeal from a lower court to be subjected to *de novo* review. Not so. Confirming an arbitration award is a summary proceeding subject to review for only the most extreme cases of intentional abuse. Arbitrator Skulnik provided a colorable basis for the award and did not misapply the law, much less deliberately rule in manifest disregard of the law. The Arbitrator's determinations are supported

by law and his evidentiary conclusions are entitled to deference. The award should be confirmed and the instant motion denied.

V. **CONCLUSION**

For the above reasons, MGH respectfully requests that the Court deny Hamilton's motion and confirm MGH's petition to confirm the arbitration award.

**Dated:** December 22, 2023

Respectfully submitted,

/s/Mark Klapow
Mark Klapow
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 624-2500
MKlapow@crowell.com