UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERCANTILE GLOBAL HOLDINGS, INC., <br><br> Petitioner, <br><br> v. <br><br> HAMILTON M&A FUND, SP, <br><br> Respondent. | 23 Civ. 8446 (DEH) <br><br> **OPINION <br> AND ORDER** |

DALE E. HO, United States District Judge:

In this action, Petitioner Mercantile Global Holdings, Inc. ("Mercantile") petitions for confirmation of an arbitral award issued on September 13, 2023 (the "Award"). Respondent Hamilton M&A Fund, SP, ("Hamilton") moves to vacate the Award, arguing that it was rendered in manifest disregard of law. For the following reasons, the Petition is **GRANTED**, Respondents' motion is **DENIED**, and the award is **CONFIRMED.**

### BACKGROUND

Mercantile is a bank holding company incorporated in Delaware. *See* Award ¶ 1, ECF No. 1-1. Its subsidiary, Mercantile Bank International, is a digital asset custody bank. *See id.* Hamilton is a segregated portfolio company of Hamilton Opportunity Fund, SPC, a Cayman Islands company operating as a mutual fund. *See id.* ¶ 2. These entities have entered into various agreements, including the agreements at issue in this arbitration, pursuant to which Hamilton exercised an option to acquire preferred shares in Mercantile. *See id.* ¶¶ 3-4.

On September 16, 2022, the parties in this action executed four agreements, including two Investment Agreements. *See id.* ¶¶ 29-30. Under the terms of the Investment Agreements, Hamilton was obligated to provide funds to Mercantile for working capital and to retire existing debt, in exchange for preferred shares of Mercantile's stock. *See id.* ¶¶ 26-29. On the day the parties signed the Investment Agreements, Hamilton instructed its bank to wire the funds to

Mercantile. *Id.* ¶ 30. However, this wire transaction was never completed due to the United States Government's seizure of Hamilton's funds in connection with a criminal investigation. *See id.* ¶ 31.

Mercantile commenced the underlying arbitration proceedings on September 30, 2022. *See id.* ¶ 8. Among other stipulations, the parties agreed that Delaware law would govern their dispute. *See id.* ¶ 14(d). Following a hearing with testimony from six witnesses and post-hearing briefing, *see id.* ¶¶ 20-21, the arbitrator issued the Award on September 13, 2023. In substance, the arbitrator found that Hamilton had no valid excuse for non-performance of its obligations under the Investment Agreements, making it liable for breach of contract. *See id.* ¶ 62.

The arbitrator awarded Mercantile $20,251,062.14 in damages and $1,104,806.43 in fees and costs. *Id.* ¶¶ 62, 91-93. In calculating damages, he rejected Mercantile's asserted damages for future lost profits, reasoning that its expert improperly assumed a dramatic increase in profitability without any factual basis to do so. *See id.* ¶¶ 70-72. Because Delaware law requires that expectation damages be proven with reasonable certainty, the arbitrator declined to award lost profit damages. *See id.* ¶ 76.

Instead, the damages figure in the Award reflects Mercantile's expectation damages, namely the difference between the contract price and the market value of Mercantile's shares. *See id.* ¶ 83. The arbitrator arrived at this figure as follows: first, he rejected each side's proffered market value for the shares, as Mercantile argued the shares were worthless and Hamilton argued they were worth exactly the full contract price. *See id.* ¶¶ 77-79. Because neither party offered a tenable estimate, and no replacement purchaser had bought the shares, the arbitrator needed to estimate the market value of the shares, in order to deduct it from the contract price. *Id.* ¶ 78. After noting that neither side's expert made an estimate of this value,

the arbitrator relied on testimony from Mercantile's damages expert that the eventual resale value of the shares may be $20 million, and that this resale value should be subject to some discount rate to account for time spent finding a replacement purchaser. *See id.* ¶¶ 79-80. The arbitrator quoted testimony from Hamilton's damages expert, characterizing his testimony as the expert "agree[ing] with the approach but not with [the] discount rate." *Id.* ¶ 81. The arbitrator relied on this to "accept[] both sides' estimate of $20 million in two years discounted to the date of breach." *Id.* ¶¶ 81-82. In doing so, he acknowledged that this figure "is no more than a guess." *Id.* ¶ 82 n.28. He then "adopt[ed] a discount rate of 10%" to $20 million over two years, leading to a value of $16,388,190.86, which he then subtracted from the contract price, giving the total expectation damages award.[1] *Id.* ¶ 83.

On September 25, 2023, Mercantile filed the Petition to confirm the Award. *See* Pet. to Confirm Arbitration Award, ECF No. 1. On December 6, 2023, Hamilton filed a cross-motion to vacate the Award. *See* Resp't's Mot. to Vacate Arbitration Award, ECF No. 11.

## LEGAL STANDARDS

Confirmation of an arbitration proceeding is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022).[2] "[A]rbitration panel determinations are generally accorded great deference under the Federal Arbitration Act [("FAA")]." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (describing a district court's role in reviewing an arbitration award as

---

[1] The arbitrator also deducted $450,000 from this amount, to reflect a separate loan that Mercantile agreed was appropriate to offset from its damages. *See id.* ¶¶ 56, 83.

[2] In all quotations from cases, internal quotation marks, brackets, citations, ellipses, and footnotes are omitted unless otherwise indicated.

3

"narrowly limited"). "Because the FAA establishes a strong presumption in favor of enforcing an arbitration award, . . . an award is presumed valid unless proved otherwise." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 389 (2d Cir. 2023).

"The FAA provides a streamlined process for a party seeking a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021). Under this process, the Court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. Section 10(a) of the FAA sets forth the narrow grounds for vacating an arbitration award. *See* 9 U.S.C. § 10(a)(1)-(4). As relevant here, the Second Circuit has held that "manifest disregard of the law . . . remains a valid ground for vacating arbitration awards," as a "judicial gloss on the[] specific grounds for vacatur of arbitration awards." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451-52 (2d Cir. 2011).

"A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). "Vacatur is only warranted . . . when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019).

> To succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it. In addition to this subjective component, a finding of manifest disregard requires an objective determination that the disregarded legal principle was well defined, explicit, and clearly applicable.

*Seneca Nation of Indians*, 988 F.3d at 626. "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *T.Co Metals, LLC*, 592 F.3d at 339 (emphasis in original).

## DISCUSSION

Hamilton's motion to vacate is denied because there is a barely colorable justification for the Award's damages calculation. Specifically, the arbitrator determined the resale value of Mercantile's shares based on what he understood to be an estimate mutually agreeable to the parties, and used this resale value to estimate Petitioner's damages. Because the motion to vacate is denied, the Award is confirmed.

In the Award, the arbitrator determined the resale value of the shares based on what it understood to be "both sides' estimate of $20 million in two years discounted to the date of breach." Award ¶ 82. First, he rejected the parties' "extreme positions," as each side "opted to shoot the moon," by arguing that the shares were either worthless or worth the contract price. *Id.* ¶¶ 77, 82 n.28. Instead, the arbitrator relied on testimony from John Hekman, Mercantile's damages expert, that the proper way to determine the resale value of the shares would be to determine the value of a replacement investment, and discount that value to account for the delay. *Id.* ¶ 80 (quoting Dr. Hekman as testifying, "In my mind the way to offset that is to say how long would it take them to get a replacement investment and then get the present value of what that would be and that would be the offset."). The arbitrator continued that Keith Hock, Hamilton's damages expert, "agreed with the approach but not with [the] discount rate." *Id.* ¶ 81 (quoting Mr. Hock's testimony that "[he] [didn't] necessarily disagree with the concept of if I get $20 million from two years from now," but that "[his] only comment was going to be" that the discount rate Dr. Hekman proposed was excessive). Although it is true that the arbitrator acknowledged that the $20 million figure was "no more than a guess," he relied on it because it

5

was "the *only* estimate offered in this case, [even though] [t]he [p]arties had adequate opportunity to provide an estimate of market value." *Id.* ¶ 82 n.28 (emphasis in original).  In other words, the arbitrator relied on a figure that he understood to be acceptable to both sides' damages experts, which was the most accurate estimate offered (and indeed, the only one).

This reasoning is sufficient under the deferential standard of review used to confirm arbitral awards.  "A barely colorable justification exists so long as the arbitrators had reasoning on which they could have justifiably rested their decision." *Smarter Tools Inc.*, 57 F.4th at 383.  This is the case here: the arbitrator had justifiable reasons to reject the parties' "extreme positions," and thus was forced to rely on a figure that he understood to be acceptable to both sides' damages experts.  Award, ¶¶ 77, 82.  Although he characterized this as "no more than a guess," *id.* ¶ 82 n.28, the absence of better estimates and the fact that the testimony of both sides' experts supported this figure suffices as a "barely colorable" justification for the arbitrator's decision.  *See T.Co Metals, LLC*, 592 F.3d at 339; *accord Elwell v. Raymond James Fin. Servs., Inc.*, No. 22 Civ. 10125, 2023 WL 5186275, at *8 n.8 (S.D.N.Y. Aug. 10, 2023) ("[T]here is a colorable justification for the Award in this case, such that the Court could theorize how calculating damages in the way done by the arbitrators would be proper.  In this Circuit, that is all that is required to enforce the Award.").

Respondent's arguments to the contrary fail.  It primarily focuses on the arbitrator's acknowledgement that his estimate of the resale value of the shares was "no more than a guess," Award ¶ 82 n.28, arguing that the arbitrator willfully ignored Delaware law, which requires damages to be determined with reasonable certainty.  Respondent notes that the arbitrator applied this principle when he declined to award lost profit damages because they were too speculative, *id.* ¶ 73, yet it awarded expectation damages based on what it acknowledged was a guess.  This argument fails because it ignores that the estimate that the arbitrator used was one that he

6

understood to be agreed-upon by the parties' experts. In the absence of any better evidence, he used "the *only* estimate offered." *Id.* ¶ 82 n.28. Rather than establishing that the arbitrator "willfully flouted the governing law by refusing to apply it," *Seneca Nation of Indians*, 988 F.3d at 626, Respondent's quotations from the Award suggest that the arbitrator was trying to faithfully apply Delaware law to a sparse record. As to any tension between the Final Award's holding on profit damages and on expectation damages, "internal inconsistencies within an arbitral judgment are not grounds for vacatur." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 211 (2d Cir. 2002); *accord Golden Krust Franchising, Inc. v. Actus Rest. Grp., Inc.*, No. 20 Civ. 7321, 2021 WL 4974808, at *4 (S.D.N.Y. Oct. 26, 2021). Taken as a whole, the Award's discussion of Mercantile's expectation damages provides no basis to conclude that this is one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals*, 592 F.3d at 339.

Respondent does not establish manifest disregard of law. Because the FAA requires that an arbitral award be confirmed unless it is vacated, *see* 9 U.S.C. § 9, Petitioner's petition to confirm the award is granted.

## CONCLUSION

For the reasons given above, Respondent's motion to vacate the Award is **DENIED** and Petitioner's petition to confirm the award is **GRANTED**. The parties' motions to seal the exhibits filed in connection with the petition and the motion to vacate are addressed by a separate order.

The Clerk of Court is respectfully directed to close the motion at ECF No. 11 and to terminate the case.

SO ORDERED.

Dated: May 3, 2024
New York, New York

DALE E. HO
United States District Judge